## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **LOUISE BEAUDRY**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| **SHARKNINJA OPERATING LLC**, | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, **LOUISE BEAUDRY** (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1.      This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff after Plaintiff was seriously injured by a "Ninja Professional Plus Blender."

2.      Defendant SharkaNinja Operating LLC manufactures, markets, imports, distributes and sell a wide-range of consumer products, including the subject "Ninja Professional Plus Blender," which specifically includes the Model BN753TGT (hereafter referred to as "subject blender" or "Ninja blender(s)") that is at issue in this case.

3.      On or about April 9, 2023, Plaintiff suffered serious and substantial laceration injuries as the direct and proximate result of the Ninja blender's blade assembly detaching from the blade base during the normal, intended use of the Ninja blender.

1

4.      The Ninja blenders are defectively designed and manufactured in that the unit's stacked blade assembly does not lock into place and is not secured to the gear shaft. When used in its normal and intended manner by consumers, the blade assembly can fall out of the pitcher, putting the user at risk of sustaining severe lacerations and injuries requiring medical attention. The Ninja blenders pose a safety risk to consumers and to other individuals who may be in close proximity to the Ninja blenders while they are in use.

5.      As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINITFF LOUISE BEAUDRY

6.      Plaintiff is a resident of the City of Pompano Beach, County of Broward, State of Florida and remains domiciled in the same.

7.      On or about April 9, 2023, Plaintiff was using the blender designed, manufactured, marketed, imported, distributed and sold by Defendant SharkNinja for its intended and reasonably foreseeable purpose of blending and cooking. While using the blender, Plaintiff sustained laceration injuries as the direct and proximate result of the blender's blade assembly detaching from the blade base during the normal, intended use of the blender. The incident occurred as the result of the Ninja blenders'' defect(s), namely, the Ninja blender's use of an unsecured blade assembly.

## DEFENDANT SHARKNINJA OPERATING, LLC

8.      Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject Ninja blender.

9.      Sharkninja is a limited liability company organized under the laws of the State of Delaware

with its principal place of business in Massachusetts, whose sole member is EP Midco LLC, a Massachusetts limited liability company created and organized under the laws of the State of Delaware with its principal place of business in Massachusetts, whose sole member is Global Appliance, LLC, a Delaware limited liability company with its principal place of business in Massachusetts, whose sole member is Global Appliance UK Holdco Ltd., a corporation organized under the laws of the United Kingdom with its principal place of business located in England. Global Appliance UK Holdco Ltd. is a private limited company organized under the laws of England and Wales with its principal place of business in Leeds, England. SharkNinja Appliance UK Holdco Limited is wholly owned by SharkNinja Global SPV, Ltd., an exempted company incorporated in the Cayman Islands, which is wholly owned by SharkNinja, Inc., a publicly held exempted company incorporated in the Cayman Islands. No publicly held company owns more than 10% of SharkNinja, Inc

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

## FACTUAL BACKGROUND

11.     Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the blenders at issue in this litigation.

12.     Ninja blenders, including the Ninja blender that injured Plaintiff, essentially have three main components: a base unit which contains a high-speed motor and a gear shaft ("motor base"); a pitcher, which locks on to the motor base; and a stacked blade assembly with six sharp blades which is dropped onto the gear shaft ("blade assembly").

3

13.     To assemble the unit, the user first aligns and lowers the pitcher onto the motor base, then rotates the pitcher clockwise until the pitcher locks into place.  Next the user takes the blade assembly and places it onto the gear shaft.  Once the user has added the desired ingredients, the lid is place on top of the pitcher and locked into place.



*See*, Ninja BL750 Owner's Manual, p. 12.
A copy of the Owner's Manual is attached hereto as Exhibit A.

14.     Unlike the pitcher and pitcher lid, the blade assembly does not lock into place, and is not otherwise secured to the gear shaft.  Instead, the blade assembly sits "loosely onto the drive gear."[1]

15.     As a result, if the user pours the pitcher after removing the lid, or if the lid falls off the pitcher during pouring, the loose blade assembly can easily fall out of the pitcher and onto consumers, resulting in physical injuries such as severe lacerations.

16.     Defendant SharkNinja became aware of this defect as early as November 12, 2015, when, in conjunction with the Consumer Product Safety Commission (CPSC), it recalled roughly 1.1. million of its Ninja BL 660 series blenders for this exact defect.[2]

17.     According to the CPSC, the firm received 53 reports of lacerations caused by the stacked

---

[1] *See* BL642 30 Owner's Manual, p. 12.
[2] *See* the CPSC Recall Notice from November 12, 2015 (https://www.cpsc.gov/Recalls/2016/Laceration-Injuries-Prompt-SharkNinja-to-Recall-Ninja-BL660-Blenders), a copy of which is attached hereto as "Exhibit B."

blade assembly falling out of the pitcher when consumers poured or inverted the pitcher after removing the lid with the blade assembly still inside.[3]

18.    Despite its knowledge of this defect, Defendant SharkNinja has continued to sell and design blenders with loose, unsecured blade assemblies, including blenders like the BL770 blender involved in this case.

19.    The Ninja blenders have been designed and manufactured such that consumers cannot safely use them in the intended manner without risk of physical injury.

20.    By reason of the forgoing acts or omissions, the above-named Plaintiff purchased the Ninja blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

21.    Plaintiff used his Ninja blender for its intended purpose of preparing meals and drinks for himself and/or family and did so in a manner that was reasonable and foreseeable by Defendant.

22.    However, the aforementioned Ninja blender was defectively designed and manufactured by Defendant in that its loose, unsecured blade assembly is able to fall out of the pitcher during the normal, intended use of the Ninja blender, putting consumers, such as Plaintiff, at risk of lacerations and other physical injuries.

23.     Defendant's Ninja blenders possess defects that make them unreasonably dangerous for their intended use by consumers because the stacked blade assembly does not lock into place and is not otherwise secured to the gear shaft.

24.    Economic, safer alternative designs were available that could have prevented the Ninja blender's blade assembly from easily falling out of the pitcher when it is poured or inverted. Examples of such designs include, but are not limited to, securing or affixing the blade assembly

---

[3] *Id.*

to the gear shaft or designing a blade assembly that locks into place.

25.     As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous blender, which resulted in significant and painful bodily injuries.

26.     Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's blender as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

## COUNT I
## STRICT LIABILITY

27.     At the time of Plaintiff's injuries, Defendant's blenders were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

28.     Defendant's blenders were in the same or substantially similar condition as when they left the possession of Defendant.

29.     Plaintiff did not misuse or materially alter the subject blender.

30.     The blenders did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

31.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the blenders safe. Specifically:

      a.   The blenders designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b.    The seriousness of the potential laceration injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

    c.    Defendant failed to properly market, design, manufacture, package, distribute, supply, and sell the blenders, despite having extensive knowledge that the aforementioned injuries could and did occur; and

    e.    Defendant failed to warn and place adequate warnings and instructions on the blenders' packaging.

32.    Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## COUNT II

## NEGLIGENCE

33.    Defendant has a duty of reasonable care to design, manufacture, market, and sell non-defective blenders that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

34.    Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, packaging, sale and marketing of its blenders in that Defendant knew or should have known that said blenders created a high risk of unreasonable harm to the Plaintiff and consumers alike.

35.    Defendant was negligent in the design, manufacture, advertising, warning, marketing, packaging and sale of its blenders in that, among other things, it:

    a.    Failed to use due care in designing and manufacturing the blenders to avoid the aforementioned risks to individuals;

b.  Placed an unsafe product into the stream of commerce;

c.  Were otherwise careless or negligent.

36.  Despite the fact that Defendant knew or should have known that its Ninja blenders were dangerously defective and could cause the injuries described herein, Defendant continued to market its Ninja blenders to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## DEMAND FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the SharkNinja for damages, including punitive damages if applicable, to which she is entitled by law, as well as all costs of this action and interest to the full extent of the law, whether arising under the common law and/or statutory law, including:

a.  judgment for Plaintiff and against SharkNinja;

b.  damages to compensate Plaintiff for their injuries, economic losses and pain and suffering sustained as a result of the use of the SharkNinja's subject blender;

c.  pre and post judgment interest at the lawful rate;

d.  an order allowing leave to amend her complaint to allow punitive on all applicable Counts as permitted by the law;

e.  a trial by jury on all issues of the case; and

f. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

**JOHNSON BECKER, PLLC**

Dated: March 24, 2025

*/s/ Lisa A. Gorshe, Esq.*
Lisa A. Gorshe, Esq. (FL #122180)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
lgorshe@johnsonbecker.com

***Attorneys for Plaintiff***